IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID BRIGHTWELL,                          *
                    Plaintiff,
            v.                             *      CIVIL ACTION NO. DKC-11-3278

GREGG L. HERSHBERGER, et al.,              *
                    Defendants.
                                          ***

## MEMORANDUM OPINION

Pending are Christine Fuller and Crystal Swecker's (the "Medical Defendants") Motion to Dismiss (ECF No. 42),  Administrative Law Judge Harriett Helford's Motion to Dismiss (ECF No. 50), and a Motion to Dismiss, or in the Alternative Motion for Summary Judgment, filed on behalf of Commissioner of Correction J. Michael Stouffer, Executive Director of the Inmate Grievance Office, Scott S. Oakley, Warden of Roxbury Correctional Institution (RCI) Gregg L. Hershberger, Lt. Gary Winters, Sgt. James Stotler, C.O. II Roy Hess, C.O. II Marvin Gillespie, C.O. II Aaron Miller, C.O. II Chaz Younger, and Correctional Case Management Specialist II John Alderton (the "Correctional Defendants") (ECF No. 52).   Plaintiff has responded.  ECF Nos. 63, 64, 66 & 67.[1]  Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the dispositive motion filed by the Medical Defendants will be granted, the dispositive motion filed by Harriet Helford will be granted, and the dispositive motion filed by the Correctional Defendants, treated as a motion for summary judgment, will be granted in part and denied in part.

---

[1] Plaintiff has filed a Motion to Reconsider the denial of a default judgment against Defendant Miller.  ECF No. 68. Plaintiff's complaint was filed against C.O. II Miller.  Plaintiff states that the record before the court makes clear that there were two C.O. II Millers working at the time of the offense.  He indicates that Aaron Miller aka A.D. Miller was not involved in the alleged assault but rather Plaintiff intended to sue David Miller but did not then know his full name.  David Miller has failed to respond to the complaint.  *Id.*  Plaintiff's motion for reconsideration will be denied in that it does not appear proper service was effected on C.O.II David Miller.  However, the Clerk will be instructed to amend the docket to reflect that David Miller is the proper name of Defendant.  Plaintiff's complaint against Aaron Miller shall be dismissed.

**Background**

Plaintiff, by way of amended complaint, states that on the morning of February 5, 2011, while incarcerated at the Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland, he was let out of the shower handcuffed, at which time Defendant Stotler stated to him, "Since you are bad nigger, we going to find out."  He states that Defendants Stotler, Younger, Gillespie, Hess and Miller then rushed him, punching, stomping, kicking, and dragging him down the tier to cell 5-C-37, where the assault continued causing bleeding to his nose, bottom left lip, and left knee.   Plaintiff claims he felt the left side of his face swelling and his left hand, including two fingers, swelled. Plaintiff further claims that his back "was hurting worse than before" and his left knee was injured.  Plaintiff states that he asked the correctional officers to take him to the dispensary but they laughed and left. Plaintiff claims that later he asked Defendant Miller, Correctional Officer "Lore",[2]  and an unidentified officer if he could be taken to the dispensary.  They all refused.  ECF Nos. 1 & 6.

Plaintiff states that when the nurse made rounds on the evening of February 5, 2011, he showed her his injuries and she advised him to put in a sick call slip.  *Id*.  Plaintiff states he submitted sick call requests on February 5, 6, and 7, 2011.  He states he was taken to the dispensary on the 11:00 p.m to 7:00 a.m. shift on February 7, 2011, and seen by Christine Fuller, R.N., who provided no treatment.  He states that three "John and Jane Doe" correctional officers were present and took pictures of his injuries but did not take pictures of his right wrist, left hand, or left knee.  *Id*.

Plaintiff states that on February 18, 2011, he was interviewed by an RCI Investigator. Plaintiff requested the unidentified investigator interview inmates Williams, McKenzie, Owens, and all the prisoners on the tier.  He states that the investigator only interviewed McKenzie and Owens

---

[2] The proper spelling of this officer's name is unclear.

and thus "intentionally aided and abetted the defendants that attacked me." Plaintiff states that the investigator failed to perform his job in a professional manner. *Id*.

Plaintiff further claims on that February 22, 2011, Defendant Crystal Swecker, a Physician's Assistant, evaluated him for his annual medical exam and at this time she cleaned and bandaged his left knee. He states that this was the first medical attention he received for his injuries and Swecker did not write this information in the medical report. He further alleges she falsely dated her report February 21, 2011. *Id*. On February 23, 2011, Plaintiff states he was taken to the Maryland Correctional Institution-Hagerstown for x-rays and was given Tylenol for pain relief. *Id*. Plaintiff states that since the attack the Correctional Defendants refused to give him showers for weeks at a time. *Id*.

Plaintiff states that he filed an administrative remedy ("ARP") pursuant to prison procedure, but his claims were dismissed for procedural reasons at all stages of the process. He claims that when his claim reached the Inmate Grievance Office ("IGO"), he received a preliminary hearing order which was initially dismissed, then multiple notices of hearing dates were issued. He states that he requested inmate Darnell Owens and others, as witnesses in his grievance hearing. *Id*. He states that he advised Executive Director Scott Oakley that Owens was due to be released from incarceration but that as long as Owens was available for the hearing he did not object to Oakley's repeated rescheduling of the hearing. Plaintiff notes irregularities with his requested witnesses. He indicates that on November 9, 2011, a hearing was held before Administrative Law Judge ("ALJ") Harriett C. Helford. Plaintiff states that he reiterated his request for witnesses but the ALJ "aided and abetted the defendants' sabotage of the hearing." Plaintiff states that although the DOC had been granted numerous postponements, the ALJ declined to postpone the hearing so that Plaintiff could secure his witnesses. He further indicates that although Owens was still incarcerated, the DOC failed to

produce him for the hearing.  He states that the ALJ did not provide him with a fair hearing and lied in her findings, failing to mention anything about Plaintiff's request for witnesses. *Id.*

Additionally, Plaintiff claims that while housed at RCI, Defendant Alderton, Plaintiff's case management specialist, repeatedly ignored Plaintiff's request for welfare commissary, including stationary, envelopes, and printouts of his prisoner account, items to which he was entitled as an indigent inmate.  *Id.*

Plaintiff states that Defendant Winters was Plaintiff's housing unit supervisor at RCI and that Winters allowed his subordinates to threaten, harass, and direct  "hate crimes [and] racism" toward him.  He states that Winters also called him and his cellmate "niggers" on December 26, 2010.  *Id.*

### Standard of Review

A.     Motion to Dismiss

The  purpose  of  a  motion  to  dismiss  pursuant  to  Fed.  R.  Civ.  P.  12(b)(6)  is  to  test  the sufficiency of the  plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).   The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  *Id.* at 563.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

B.      Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

### Discussion

A.      Administrative Law Judge Immunity

Plaintiff's claim that ALJ Helford denied him due process is subject to dismissal.  The defense of absolute immunity extends to "officials whose special functions or constitutional status requires complete protection from suit." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Judges, whether presiding at the state or federal level, are clearly among those officials who are entitled to such immunity.  *See Stump v. Sparkman*, 435 U.S. 349 (1978).  Because it is a benefit to the public at large, "whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences," *Pierson v. Ray*, 386 U.S. 547, 554 (1967), absolute immunity is necessary so that judges can perform their functions without harassment or intimidation.

 "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the

authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 10 (1991), quoting *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872). Administrative law judges are entitled to immunity so long as they perform functions similar to judges and prosecutors in a setting like that of a court. *See Butz v. Economu*, 438 U.S. 478, 512-13 (1978); *South Carolina State Ports Authority v. Federal Maritime Commission*, 243 F. 3d 165, 174 (4th Cir. 2001). Moreover, the law is well-settled that the doctrine of judicial immunity is applicable to actions filed under 42 U.S.C. § 1983. *Stump*, 435 U.S. at 356. In the instant case it is clear that Helford was performing judicial functions in ruling on Plaintiff's request for postponement, determining allowable witnesses, and ruling on his grievance. Plaintiff's complaint against her is subject to dismissal.

B.     Access to Courts

Plaintiff's claim that as an indigent he was denied legal materials is also subject to dismissal. Plaintiff alleges Defendant Alderton ignored several requests for legal pads, envelopes, copy work, manila envelopes, and a printout of his prisoner account. ECF Nos. 1 & 6. He also alleges that Alderton's actions sabotaged the IGO hearing. *Id*. Alderton avers that he complied with all requests received from Plaintiff. ECF No. 52, Ex. 6.

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 354.

Plaintiff must show actual prejudice to his ability to proceed with his legal claim. *See Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1998); *Bernadou v. Purnell*, 836 F. Supp. 319, 325 (D. Md. 1994). Plaintiff does not explain with any specificity how the denial of the requested materials injured him and has offered nothing more than a bald allegation that the denial of materials harmed him. Accordingly, his claim fails.

C.     Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 559 U.S. 34, 130 S.Ct, 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because

the prisoner had the good fortune to escape serious harm. *Wilkens,* 559 U.S. at ___, 130 S.Ct. at 1178-79.

Plaintiff alleges that Defendants Stotler, Younger, Miller, Gillespie and Hess assaulted him on February 5, 2011.   ECF No. 1.   Plaintiff wrote a letter to the Internal Investigation Unit ("IIU") on February 5, 2011, regarding the assault.   ECF No. 52, Ex. 1, p. 17, 64-67.   Plaintiff's allegations were reported to IIU Duty Officer Murray on February 8, 2011, by Captain Tony Mills, who indicated to IIU that there were no reported incidents involving Plaintiff on February 5, 2011.   *Id*. p. 12.

On February 18, 2011, Det. Sgt. Fagan of IIU interviewed Plaintiff at RCI.   *Id*., p. 12-13. Plaintiff reiterated his claim that Stotler, Younger, Hess, Miller, and Gillespie kicked, punched and stomped him without cause.   He described the officers assigned to the 7-3 shift as "Racists."   Fagan interviewed inmate Darnell Owens, Plaintiff's cell mate at the time of the incident.   Owens described an incident where Stotler came to their cell with a noose for President Obama.   He also claimed that Officer Hess, who escorted him to the interview, told him not to get involved.   *Id*., p. 132.   Owens advised Fagan that on the day of the incident Stotler said to Plaintiff, "You think you are a tough nigger" and kicked Plaintiff and dragged him down to Cell 37.   Owens stated that he observed Plaintiff bleeding from one of his eyes and Plaintiff's hands were swollen and his knee was "busted open."   Owens further stated that after the incident Winters came to the cell and told him that he would be getting a knife or assault charge if he continued to submit ARPs.   Fagan also interviewed Inmate McKenzie who advised that he was asleep at the time but heard a commotion and saw Stotler and another officer standing outside of Cell 37.   *Id*. p. 14.   He heard Plaintiff say something like "why do you have to jump me?"   He stated that at that time everything got quiet, but then he heard what he described as a commotion again, and assumed Plaintiff was "getting beat."   *Id*.   McKenzie stated he

did not see who entered or exited the cell, but that he saw Miller, Gillespie and Hines breathing hard. *Id*.

Stotler avers that on February 5, 2011, Plaintiff and Darnell Owens were moved from Cell 48 to Cell 37 on C-Tier in H. U. #5 because Cell 48 is located next to the shower and Plaintiff had requested numerous times to move because he did not like the steam from the shower coming into his cell. Stotler avers that he instructed Officers Hess and Miller to move Plaintiff and Owens to Cell 37 when they came out of the shower. He states that when Plaintiff and Owens exited the shower they were moved to Cell 37 without incident. *Id*.

On June 3, 2011, Det. Sgt. Fagan interviewed Officer Hess, who reported that he understood Plaintiff wanted to be moved to another location to get away from the heavy volume of traffic in the shower area. Hess stated that on February 5, 2011, he and Miller moved Plaintiff and his cellmate from Cell 48 to Cell 37 without incident. *Id*. p. 15-16., p. 59-60. Miller also avers that the escort was uneventful. *Id*., p. 16-17, p. 61-62. Miller advised Fagan that he had no problems with Plaintiff or Owens, he was unaware how Plaintiff may have sustained any injuries, and he had not heard anyone referring to Plaintiff as "nigger." *Id.,* p. 17.

On July 13, 2011, Fagan interviewed Gillespie, who likewise reported that he had no problems with Plaintiff and no idea why Plaintiff had filed a lawsuit. *Id*., p. 16. Fagan interviewed Younger on July 18, 0211. Younger stated that he had first learned of the lawsuit from Gillespie and had "no idea what the inmate was talking about." Younger advised he previously assisted with Plaintiff's cell moves and never experienced any problems. *Id.,* p. 16.

In addition to his own affidavit (ECF No. 64, Ex. 1), wherein he recounts his allegation of the February 5, 2011 assault, Plaintiff has provided an affidavit executed by Darnell Owens corroborating

that Plaintiff, while handcuffed, was beaten without provocation by Defendants Stotler, Gillespie, Miller, Hess and Younger.  ECF No. 67.

Clearly, the very fact of whether Plaintiff was assaulted remains in dispute.  Such a factual issue can "be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," and thus, summary judgment is inappropriate.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("Credibility determinations…are jury functions, not those of a judge….").  Further, if the actions of Defendants Stotler, Younger, Gillespie, Hess and Miller occurred in the manner alleged by Plaintiff, qualified immunity would not apply.  Accordingly, summary judgment is denied as to Plaintiff's claim of excessive force.

D.     Verbal Abuse

To the extent Plaintiff seeks damages for his claim that Stotler and Winter used racial epithets, the claim fails.  "[N]ot all undesirable behavior by state actors is unconstitutional."  *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995).  Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim.  *See  Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *Cole v. Cole*,633 F.2d 1083, 1091 (4th Cir. 1980) (no harm alleged from claimed verbal harassment and abuse by police officer).  Accordingly, Plaintiff's allegation that Defendants Stotler and Winter verbally harassed him fails to state a claim.

E.     Denial of Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing

*Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference". *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998).   Without evidence that a medical provider linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present.   *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refutes presence of doctor's subjective knowledge).   Clearly Defendants Swecker and Fuller provided Plaintiff medical care and documents his claim that his injuries were caused by an assault by correctional staff.   Plaintiff states that Defendant Fuller was negligent in her treatment; however, alleged negligence does not state a constitutional claim.

Plaintiff's claim that Correctional Defendants denied him medical care by refusing to escort him to the dispensary after the February 5, 2011 incident fails.   Plaintiff submitted sick call slips on February 5 and 6, 2011, and was seen by medical staff on February 7, 2011.   Assuming Correctional Defendants failed to transport Plaintiff to the dispensary on February 5 or 6 as he requested, there is simply no evidence before the court that Plaintiff's medical needs were serious or that the named Defendants acted wantonly.   Further, there is no indication that Correctional Defendants interfered with Plaintiff's use of the sick call process or interfered with the provision of medical care.   Medical records demonstrate that Plaintiff received constitutionally adequate medical care.

F.      Conditions of Confinement

Plaintiff alleges that after the February 5, 2011 incident he was denied showers for weeks. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).   However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a
> prisoner must prove two elements - that 'the deprivation of [a] basic
> human need was *objectively* sufficiently serious,' and that '*subjectively*
> the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded.  *Wilson*, 501 U. S. at 298.  In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so."  *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir.2002).  Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law.  *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury.  "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003).  Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions.  *See Odom v. South Carolina*

*Dept. of Corrections*, 349 F. 3d 765, 770 (4ᵗʰ Cir. 2003). Plaintiff has failed to allege, much less demonstrate, any injury from the alleged denial of showers. As such his claim fails.

G.    Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *See Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *See ACLU of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4ᵗʰ Cir. 1993).

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *See Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287, (1977); *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir.1999) (*en banc*). A retaliation claim has three elements: 1) the prisoner engaged in protected conduct; 2) an adverse action was taken against the prisoner that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, i.e., the prisoner's protected conduct motivated at least in part the adverse action. *See Thaddeus-X.*, 175 F.3d at 394.

Plaintiff offers nothing in support of his retaliation claim other than self-serving conclusory averments. As noted above, Plaintiff has failed to allege much less demonstrate any adversity as a result of alleged retaliatory conduct which was limited to the denial of showers. There is nothing in the record to suggest that the conduct of Defendants was causally connected to any exercise of Plaintiff's protected rights. "In the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3rd 1310, 1317 (4th Cir. 1996). Plaintiff cannot prevail on this claim.

H.      Supervisory Liability

Plaintiff alleges that there was a pattern of physical abuse of inmates by Correctional Defendants and that he wrote complaints against the 7-3 shift for a year. He also alleges that Winters, as supervisor in H.U. #5 on the 7-3 shift, was aware of the conduct of his subordinates and failed to take any corrective action. He alleges that Winters allowed those under his supervision to threaten, harass, commit hate crimes, and exhibit racism toward Plaintiff and other inmates. ECF Nos. 1 & 6. Plaintiff alleges that Commissioner of Corrections J. Michael Stouffer, Executive Director of the Inmate Grievance Office Scott S. Oakley, Warden Hershberger and Lt. Winters failed to take disciplinary action against the officers. *Id.*

The doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates'" misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th

Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984).  Supervisory liability under §1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).  Plaintiff has pointed to no action or inaction on the part of Stouffer and Oakley that resulted in a constitutional injury, and his claims against them shall be dismissed.

As to Winters and Hershberger, Plaintiff avers that he wrote to Warden Hershberger regarding the regular abuse of inmates engaged in by the correctional officers.  He further avers that Lt. Winters as shift supervisor was aware of the improper conduct of correctional staff but likewise took no action.  The facts surrounding what Winters and Hershberger knew of the pattern of conduct of officers on the 7-3 shift of H.U. #5 remains in dispute.  Such a factual issue can "be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," and as such summary judgment is inappropriate.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("Credibility determinations…are jury functions, not those of a judge….").  Further, if the actions of Defendants Winters and Hershberger occurred in the manner alleged by Plaintiff, qualified immunity would not apply.

I.      Conspiracy

Plaintiff claims that all Defendants conspired together to violate his constitutional rights.  To establish a civil conspiracy under § 1983, Plaintiff must present evidence that Defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in

deprivation of a constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996). An essential element for a claim of conspiracy to deprive Plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006-07 (4th Cir.1987). Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy. *See Murdaugh Volkswagon v. First Nat'l Bank*, 639 F.2d 1073, 1075-76 (4th Cir.1981). Plaintiff must allege facts establishing that Defendants shared a "unity of purpose or a common design" to injure him. *See Am. Tobacco Co. v. United St*ates, 328 U.S. 781, 809-10 (1946).

Plaintiff alleges that the Medical Defendants treated his injuries but falsified the medical reports relative to same thus acting in concert with Correctional Defendants in their excessive use of force. Plaintiff's medical records from February 7, 2011 to March 31, 2011, demonstrate that at each encounter with medical staff his injuries were documented as were his claims that his injuries arose as a result of the alleged assault by correctional staff. On February 7, 2011, Fuller examined Plaintiff. She noted Plaintiff's chief complaint was "alleged assault." She noted that Plaintiff presented with "scratches on right wrist, swelling and bursting on left hand, cut inside lower left lip, large scabbed area on left knee, inner left forearm bruised." Additionally, Fuller documented the names of the officers Plaintiff claimed assaulted him. Such conduct by Fuller does not evidence a conspiracy to cover up the assault. ECF No. 42, Ex. A. Nurse sick call slips dated February 8, 2011 and February 10, 2011, reference the assault and the reporting of same. *Id.* Plaintiff was seen for follow up care on February 18, 2011, and again records reference the assault. *Id.* p. 6. PA Swecker noted on February 21, 2011, that she examined Plaintiff, who reported being attacked by correctional officers on February 5, 2011. Swecker noted a 3 cm scabbed abrasion on Plaintiff's left knee and healing scarred areas on both hands and wrists. *Id.*, p. 11, 12. A small raised deformity was observed over two of his

fingers.  Plaintiff's right wrist, left knee and lumbar spine were tender and pain medication was provided and x-rays ordered.  *Id*.  Plaintiff's claim that Fuller and Swecker conspired with Correctional Defendants by failing to document all medical care provided is unavailing.

Plaintiff claims that Commissioner of Corrections Stouffer, Executive Director of the IGO Oakley, ALJ Helford, RCI Warden Hershberger, Case Manager Alderton, and Correctional Officers Winters, Stotler, Gillespie, Miller, Hess, and Younger all conspired to cover-up the February 5, 2011 assault.  Conclusory allegations of a conspiracy are insufficient to state a claim.  *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2nd Cir. 1997) (unsupported claim of conspiracy to issue false disciplinary reports fails to state claim); *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) ("Allegations of conspiracy . . . must be pled with sufficient specificity and factual support to suggest a meeting of the minds.") (quotation omitted); *Langworthy v. Dean*, 37 F. Supp.2d 417, 424-25 (D. Md. 1999).  If Plaintiff's allegations of the February 5, 2011 assault are true, Winters, Stotler, Gillespie, Miller, Hess and Younger may have engaged in a conspiracy to hide the assault from the IIU investigating officer, medical personnel, and the court.  There are insufficient facts alleged, however, to demonstrate that Stouffer, Oakley, Helford and Alderton in any way joined such a conspiracy.  The actions of Defendants Stouffer, Oakley, Helford and Alderton as alleged, fail to demonstrate a concerted effort between them to violate Plaintiff's rights through covering up an incident of excessive use of force or otherwise.  Accordingly, Plaintiff's claim of conspiracy against them shall be dismissed.

## Conclusion

In light of the foregoing Defendants Stouffer, Oakley, Helford, Alderton, Swecker and Fuller are entitled to summary judgment.  Plaintiff's claims regarding denial of adequate medical care, conditions of confinement, and retaliation are denied.  Plaintiff's remaining claims against

Defendants Hershberger, Winters, Stotler, Gillespie, Miller, Hess and Younger shall proceed.

Counsel shall be appointed to assist Plaintiff.   A separate Order follows.


Date:   February 26, 2013                                 /s/
                                         DEBORAH K. CHASANOW
                                         United States District Judge