IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                             |   |                                   |
|-----------------------------|---|-----------------------------------|
| DAVID BRIGHTWELL            | : |                                   |
|                             | : |                                   |
| v.                          | : | Civil Action No. DKC 11-3278      |
|                             | : |                                   |
| GREGG L. HERSHBERGER, et al.| : |                                   |
|                             | : |                                   |

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion to vacate the entry of default filed by Defendant David Miller ("Defendant") (ECF No. 201). The issue has been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to vacate entry of default will be granted.

**I.   Background[1]**

A complete recitation of the factual background can be found in the court's prior memorandum opinion on summary judgment. (*See* ECF No. 183, at 2-8). For purposes of the instant motion, it is sufficient to note that Defendant is one of several correctional officers accused of assaulting Plaintiff David Brightwell ("Plaintiff"), a prisoner at the Roxbury Correctional Institution ("RCI"), in 2011. (*Id.* at 6).

---

[1] Unless otherwise noted, the facts in this opinion are undisputed.

Plaintiff's original complaint referred to a "CO II Miller" and was served on Correctional Officer Aaron Miller on January 30, 2012. (ECF No. 11, at 1). On February 20, 2013, Plaintiff clarified that the officer he intended to accuse was David Miller, not Aaron Miller. (ECF No. 68). In response, the court directed the clerk to amend the docket to reflect that David Miller was the proper defendant and to dismiss the complaint as to Aaron Miller. (ECF No. 69, at 1).

Defendant resigned from RCI on July 6, 2013, and was therefore in a different position at the beginning of the case than the other defendants, who were being represented by the State (the "State Defendants"). (ECF No. 201-2, at 4). On May 16, 2014, a separate summons was issued for Defendant. (ECF No. 96). The summons was filed with the court as executed that same day at 4:30pm at Defendant's home address. (ECF No. 101). The process server noted that "David Scott Miller is White Male, Approx. 40 years old. 6'1" 210 lbs. Black hair No glasses." (*Id.*). No answer was received from Defendant Miller, and, eventually, on Plaintiff's motion, the clerk entered a default for want of answer against him on April 20, 2015. (ECF Nos. 113; 121).

Under the discovery deadlines agreed to by the remaining parties, depositions were to be completed by August 31, 2015, and dispositive motions were due by September 30, 2015. (ECF

2

No. 134).  On September 22, Plaintiff served a subpoena on Defendant to appear for a deposition on October 8.  (ECF No. 139, at 1).  After learning of this subpoena, counsel for the State Defendants in this case ("State Counsel") asked to extend the dispositive motion deadline until after that deposition was taken.  Defendant was not represented by the State Counsel at the time, and State Counsel indicated that he had "no idea what [Defendant] w[ould] say."  (ECF No. 145-2, at 30).  State Counsel then filed a consent motion for an extension of time for dispositive motions "to allow for Plaintiff to complete Defendant Miller's deposition before the filing of a motion for summary judgment."  (ECF No. 139, at 1).

Defendant attended the October 8 deposition and, allegedly, found out for the first time that he was a Defendant in the case.  (ECF No. 148-1, at 2).  After Defendant consulted with State Counsel at the deposition, Defendant and State Counsel asked to postpone the deposition in order to confirm whether the State could represent him.  (*Id.*).  State Counsel sent an email to Plaintiff's attorney the next day indicating that State Counsel had agreed to represent Defendant and asking whether Plaintiff would consent to vacating the default against him. (*Id.* at 8).  Plaintiff refused to consent.  (*Id.* at 3).

When Plaintiff sought to reschedule Defendant's deposition that November, State Counsel objected because the State

3

Defendants had already filed their motion for summary judgment on October 23. (ECF No. 145-2, at 23-25).[2] In spite of State Counsel's objection, Plaintiff served a subpoena on Defendant on November 25; the State Defendants then filed a motion to quash, which was briefed by the parties. (ECF Nos. 145; 148; 149).[3] The court denied the motion to quash because, *inter alia*, the State Defendants had initially consented to the deposition of Defendant prior to the submission of their motion for summary judgment, but State Counsel had prevented it from being completed by requesting that the October 8 deposition be postponed. (ECF No. 150, at 5-6). Defendant's deposition was then scheduled for January 6, 2016. (*Id.* at 3).

Defendant failed to appear for his deposition on January 6, and Plaintiff's counsel moved the court to compel his attendance at a deposition. (ECF No. 154, at 2-3). The court granted Plaintiff's motion and directed Defendant to attend a deposition on February 25, and to show cause by February 19 as to why the court should not hold him in contempt for his failure to comply with the previous subpoena. (ECF No. 162). The U.S. Marshal Service executed the subpoena for the February 25 deposition

---

[2] In the State Defendants' motion for summary judgment, State Counsel again declared that it had agreed to represent Defendant. (ECF No. 141-1, at 17).

[3] In the motion to quash, State Counsel again indicated that it had agreed to represent Defendant, but also acknowledged that Defendant had not signed the formal agreement. (ECF No. 145-2).

4

(ECF No. 167), but Defendant failed to respond to the show cause order or to appear for his February deposition. (ECF No. 169). On Plaintiff's motion, the court found Defendant in contempt of court and issued a bench warrant to bring him into court unless Defendant arranged a time for a deposition with Plaintiff's counsel by March 18. (*Id.*). On March 18, Defendant's fiancé called Plaintiff's counsel to say that he wished to make arrangements for a deposition. (ECF No. 174). Although Defendant did not call back the following business day as instructed, Defendant eventually made contact with Plaintiff's counsel. Unfortunately, the time that Plaintiff and Defendant agreed upon was unworkable for State Counsel, who still did not formally represent him but sought to attend on behalf of the State Defendants. (ECF No. 176). After attempting to contact Defendant to reschedule several more times, Plaintiff filed a motion to issue a bench warrant to bring him to court for a deposition. (ECF No. 176). The court issued the bench warrant and directed Defendant to appear before the court on April 27. (ECF No. 178). Defendant appeared on April 27 and was deposed that day. (ECF No. 179).

That same day, Defendant entered into a legal representation agreement with State Counsel. (ECF No. 201-2, at 2). More than five months later, on September 30, State Counsel told the court on a conference call that it intended to file a

motion to set aside the default against him. (ECF No. 201-1, at 5). On October 14, Defendant filed the present motion. (ECF No. 201). Plaintiff responded, and Defendant replied. (ECF Nos. 202; 203).

## II. Standard of Review

Pursuant to Fed.R.Civ.P. 55(c), a court may "set aside an entry of default for good cause." Because the United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), a motion to set aside a default must be "'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments,'" *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). As a result, "[a]ny doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson*, 411 F.2d at 130.

"Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). To establish a meritorious defense, the moving party should proffer evidence that would permit a finding for the defaulting party. *Augusta*

6

*Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). The following factors should also be considered in considering a Rule 55(c) motion: "the personal responsibility of the defaulting party, the prejudice to the [other] party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006).

**III. Analysis**

Here, some of the factors tilt in each direction. "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). At his deposition, Defendant testified that he has never assaulted anyone. (ECF No. 201-2, at 9). His motion also appears to say that, despite Plaintiff's statements with regard to Aaron Miller, Defendant believes that Plaintiff intends to accuse Aaron Miller, whose testimony shows that he was present at the time of the alleged incident. (ECF No. 201-1, at 5). Defendant suggests that, unlike Aaron Miller, he was a control center officer who was not involved in floor level operations. (ECF 201-2, at 46).[4] If a jury believed Defendant,

---

[4] It is unclear from Defendant's deposition whether he was still working as a control center officer in 2011, when the

it could find in his favor, and therefore he has provided a meritorious defense.

Defendant has not, on the other hand, acted with reasonable promptness. Defendant learned of his default no later than at his October 8, 2015 deposition, but did not seek to vacate the entry until this motion was filed on October 14, 2016, more than a year later. Defendant points to the October 9 email from State Counsel to Plaintiff's counsel asking whether he would consent to vacating the entry of default. (ECF No. 148-1, at 8).[5] State Counsel gave no justification as to why Plaintiff should have consented, and Defendant provides no explanation why he did not file a motion with the court at that point. (*Id.*). Defendant points to *Russell v. Krowne*, No. DKC-08-2468, 2013 WL 66620, at *3 (D.Md. Jan. 3, 2013), to support his proposition that a delay of more than a year is not unreasonable. (ECF No. 201-1, at 5). Defendant misreads *Russell*, which stated merely that "[t]his delay, *by itself*, [wa]s not *dispositive*" in light of the other factors. *Russell*, 2013 WL 66620, at *3 (emphasis

---

assault at issue occurred. Defendant stated that the control center was his "regular post" in 2009, but that he had moved to a "floating" floor position after being in Housing Unit 5 for "almost five years" and some time before leaving RCI in 2012. (ECF No. 201-2, at 9-10).

[5] State Counsel also stakes out a precarious position here, contending that an email from him prior to the signing of the representation agreement should count in Defendant's favor, while denying responsibility for Defendant's other delays prior to signing the agreement.

8

added).   Such  a  statement  actually  implies  that,  if  the
remaining  factors  had  gone  the  other  way,  a  delay  of  one  year
could  have  been  sufficient  to  show  a  lack  of  reasonable
promptness.

Prejudice  also  tips  in  Defendant's  favor.   Because  his
deposition  has  already  taken  place  and  documents  relating  to  his
employment  at  RCI  have  already  been  produced  by  the  State
Defendants,  setting  aside  the  default  would  not  burden  Plaintiff
moving  forward.   The  parties  are  set  for  trial  beginning  in
February,  and  vacating  the  default  would  not  delay  further  court
action.   Given  that  Defendant  is  charged  with  the  same  conduct
as  the  remaining  State  Defendants  and  is  now  represented  by
State  Counsel,  there  should  be  little  change  in  how  the  parties
proceed  with  their  cases.

The  next  two  factors  focus  on  Defendant's  actions.   As
described  above,  Defendant  has  a  significant  history  of  dilatory
action  in  this  case.   Plaintiff's  counsel  and  State  Counsel  have
both  stated  that  Defendant  repeatedly  failed  to  respond  to  their
communications.   (ECF  Nos.  156,  at  2;  176,  at  1-3).   Even
assuming  that  he  never  received  service  of  the  amended  complaint
in  2014,  he  continued  to  fail  to  respond  to  subpoenas  and  court
orders  well  after  he  had  notice  in  October  of  2015.   State
counsel  previously  made  clear  that  Defendant  has  had  similar
issues  before.   (ECF  No.  156,  at  2).

Moreover, Defendant appears to be personally responsible for the delayed motion to vacate and the problems securing his deposition. Prior cases considering this factor have focused on whether the default, delay, or dilatory issues were caused by the defaulting party or instead by his attorney. *See Augusta*, 843 F.2d at 811 (emphasizing the difference between cases where the "party alone is responsible" and those where the "attorney alone is responsible"); *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987) (noting that the defaulting defendants' attorney had been responsible for their delay). In *Russell*, the court also took note that the defaulting parties' good faith efforts, noting that one defaulting party had actively sought representation and another party had engaged with the court in attempts to file papers on his own behalf. *Russell*, 2013 WL 66620, at *4. Defendant here refused to sign State Counsel's representation agreement or to seek out another attorney for more than six months after being given a copy of the complaint at the October 8 deposition. He failed to appear for subpoenas or appropriately respond to court orders numerous times during that period, and he has offered no explanation as to why he failed to appear or respond. Even after signing with State Counsel, Defendant waited another five months before notifying the court of his intent to file a motion to vacate during the teleconference on September 30, 2016. (ECF No. 201-1,

10

at 4-5).[6]   He appears to argue that the pending motion for summary judgment by the State Defendants caused his delay from October 23, 2015, until the court ruled on that motion on August 31, 2016, but he fails to explain why a motion to which he was not a party prevented him from seeking to vacate his default. (ECF No. 203, at 1-2).   All of these delays are even more unreasonable in light of Defendant's suggested defense that it was Aaron Miller, and not he, who was present at the alleged incident.

It should be noted that the analysis up until this point is based on all of these issues the court and the parties had with Defendant after October 8, 2015, when it is certain that he was aware of the case against him.   Given his history, it seems quite generous to accept his allegation that he did not recall being served with the complaint in 2014 at face value, as the court does here.   It may well be that he is being given a free pass for another year and a half of deficient responses that resulted in the entry of default.

Defendant's saving grace in this case is the final factor, the availability of lesser sanctions.   Neither party addresses this factor at length – probably because Defendant is hoping to

---

[6] To the degree that responsibility for this further delay might be shared between Defendant and State Counsel, the court sees no reason not to hold him accountable for this further delay in light of Defendant's own dilatory history.

avoid sanctions and Plaintiff is hoping to maintain Defendant's default. Although Defendant has demonstrated an inappropriate disregard for the court's orders and procedure, the presence of a meritorious defense and the lack of prejudice that vacating the default would cause caution against maintaining his entry of default rather than considering the merits of the case against him. Courts have made clear, however, that in such instances, other sanctions, including contempt and monetary penalties, are appropriate. *Augusta*, 843 F.2d at 811 ("[W]hen a default judgment is vacated the trial court may nonetheless impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees."); *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d at 953 (suggesting that charging the defaulting party with "all costs and expenses attendant to the delay, including attorney's fees" would be appropriate). In this case, Defendant has already been held in contempt of court, and much, if not all, of his extensive history of dilatory action cannot be blamed on State Counsel. Under these circumstances, he should be held accountable for his actions in a meaningful way. Therefore Defendant, in his individual capacity, will be ordered to pay all reasonable costs, expenses, and Plaintiff's attorney's fees caused by his dilatory actions after discovering that he was a Defendant on October 8, 2015, including (1) his failure to appear at his January 6, 2016,

12

deposition, (2) Plaintiff's motion to compel his attendance at the February 25 deposition, (3) his failure to appear at the February 25 deposition, (4) Plaintiff's February 26 motion to find him in contempt of court and issue a bench warrant, and (5) Plaintiff's April 11 motion to issue a bench warrant.[7]

## IV.  Conclusion

For the foregoing reasons, the motion to vacate default filed by Defendant David Miller will be granted.  A separate order will follow.

---

/s/

DEBORAH K. CHASANOW
United States District Judge

---

[7] These sanctions will not include the costs associated with the State Defendants' motion to quash Plaintiff's November 25, 2015 subpoena.  Although the extensive period during which State Counsel repeatedly expressed that it had agreed to represent Defendant, but failed to secure his signed agreement is curious, Defendant's record before the court demonstrates that he has been both difficult to reach and unwilling to participate in this case.  State Counsel's motion to quash was thus reasonable in light of its position at the time of its filing.